# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JOSEPH A. CONNOR III,<br><br>    Debtor.<br>_____<br><br>JOSEPH A. CONNOR III,<br><br>    Plaintiff,<br><br>  vs.<br><br>COUNTRYWIDE BANK NA, et al.,<br><br>    Defendants. | Case No. 06-00685<br>Chapter 7<br><br><br><br>Adv. Pro. No. 06-90076<br><br><br><br><br><br><br>Re: Docket No. 39 |

## MEMORANDUM OF DECISION
## ON MOTION TO RECONSIDER

The question is whether and to what extent the automatic stay prohibits a secured creditor from communicating with a debtor about a delinquent debt secured by a mortgage. The answer, in my view, is not simple: it all depends on the context.

### STATEMENT OF FACTS

*Mr. Connor's Bankruptcy Case*

Joseph A. Connor III owns a home that is subject to a mortgage held by

Countrywide Home Loans, Inc. ("Countrywide").

On September 22, 2006, Mr. Connor filed a petition for relief under chapter 13 of the Bankruptcy Code. This invoked the automatic stay of 11 U.S.C. § 362. Mr. Connor is not represented by counsel.

Mr. Connor's chapter 13 plan provided for the sale of the home within 12 months after the bankruptcy filing, for reduced monthly payments pending the sale, and for payment of any arrears out of the sale proceeds. Mr. Connor acknowledged that these provisions could be confirmed only if Countrywide accepted the plan. See docket number 15 in Case No. 06-00685. Countrywide, the State of Hawaii Department of Taxation, and the standing chapter 13 trustee all objected to the plan. Mr. Connor voluntarily converted his case to chapter 7 on December 1, 2006.

On December 14, 2006, Mr. Connor filed a Chapter 7 Individual Debtor's Statement of Intention. He listed his home as "secured property" and Countrywide as the secured creditor, and indicated his intention to surrender the property.

On January 11, 2007, the chapter 7 trustee reported that "there are no assets to administer for the benefit of creditors of this estate." On March 14, 2007, Mr. Connor received his discharge.

2

U.S. Bankruptcy Court - Hawaii   #06-90076   Dkt # 58   Filed 04/02/07   Page 2 of 13

*Countrywide's Post-Bankruptcy Communications with Mr. Connor*

Mr. Connor received a letter, dated December 5, 2006, from a law firm representing Countrywide. This letter was dated after Mr. Connor converted his case from chapter 13 to chapter 7 but before he filed his statement of intention. The letter makes it clear that Countrywide knew that Mr. Connor was in bankruptcy, because the letter refers to the number of Mr. Connor's bankruptcy case. The letter says:

> Dear Mr. Connor:
>
> My office has been retained by [Countrywide] to protect their [sic] interest in the above referenced matter with respect to [Mr. Connor's home].
>
> Our records indicate that you are in default for $1,707.16, representing the September 1, 2006, through December 1, 2006 payments on the loan held by Countrywide.
>
> We are writing this letter in an attempt to avoid the cost of unneeded litigation. Please tender the delinquent amount to [Countrywide] . . . .

In addition, Mr. Connor received monthly statements from Countrywide. The first statement is dated September 28, 2006, while Mr. Connor was still in chapter 13. Countrywide continued to send such statements up to the present. The statements bear the heading "<u>FOR INFORMATION PURPOSES</u>." Each statement includes the principal balance of the loan, the amount of the monthly payment due,

3

instructions on how to make a payment, a perforated, detachable payment coupon, and a return envelope. Each statement also includes the following:

**IMPORTANT NOTICE**

If you do not want us to send your monthly statements in the future, please contact us at 1-800-***-****.

This statement is being furnished for informational purposes only and should not be construed as an attempt to collect against you personally. While your obligation to Countrywide may not [sic?] be discharged, by operation of law, Countrywide has retained the ability to enforce its rights against the property securing this loan should there be a default.

If you are presently involved in a Chapter 13 proceeding, please be advised that you are required to obey all orders of the Court, including those confirming or modifying the terms of your repayment plan. You may disregard the payment information/coupon below to the extent it conflicts with any order or requirement of the Court. Your loan documents provide that if we do not receive your current home loan payment by **/**/***, your loan may be assessed a late charge of $**.**.

*Mr. Connor's Adversary Proceeding against Countrywide*

On December 18, 2006, Mr. Connor filed the complaint that commenced this adversary proceeding. The defendants are Countrywide, Countrywide Bank, N.A., Treasury Bank N.A., the law firm that sent the December 5, 2006, letter, and the person who signed the letter. The complaint alleges that the December 5, 2006 letter "is a clear violation" of 11 U.S.C. § 362(a)(6). With regard to the monthly statements, the complaint alleges that:

> Plaintiff concedes that the six notices sent to him by Countrywide Bank are not clear and unmistakable violations of 11 USC 362(a)(6), but they do have that odor about them. They are attached here as supporting evidence for plaintiff's claim, and as examples of how close to the line Countrywide is willing to walk. Plaintiff reserves the right to include them as additional violations of 11 USC 362(a)(6) in future amended filings.

The complaint further alleges that, "as a direct and proximate result of the aforesaid acts of the defendants," Mr. Connor had suffered damages in the form of mental anguish and time spent litigating with Countrywide. The complaint prays for injunctive relief "to halt defendants['] collection acts" and monetary relief.

The defendants filed a motion to dismiss the complaint, arguing that it failed to state a claim upon which relief could be granted.[1] I granted the motion in part. I ruled that the complaint did state a claim insofar as the December 5, 2006, letter was concerned, but that the monthly statements did not constitute automatic stay violations. Mr. Connor has now moved for reconsideration.

## DISCUSSION

Mr. Connor argues that my ruling on the monthly statements was premature. He contends that he did not intend to assert claims based on those notices in his original complaint and that it was error to decide claims that he had not yet

---

[1] The motion also claimed that Mr. Connor had not properly served the complaint, but the defendants acknowledged at the hearing on the motion that Mr. Connor corrected the defect.

5

asserted.

Mr. Connor's complaint addresses the monthly statements in an equivocal way. It alleges that the notices "are not clear and unmistakable violations" of the stay, which is different from saying that they are not violations of the stay. The complaint alleges that "the aforesaid acts," apparently including the transmission of the monthly statements, harmed Mr. Connor. The prayer for injunctive relief only makes sense with reference to the monthly statements because that is the only ongoing conduct which the complaint mentions. In any event, it is now clear that Mr. Connor thinks the monthly statements are stay violations and he has provided authority for that proposition. Further delay in addressing those statements would serve no useful purpose.

Nonetheless, I have reconsidered Mr. Connor's arguments and I have concluded that he is partly right.

From the commencement of the bankruptcy case until the termination of the automatic stay, creditors may not take "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The automatic stay is broad and sweeping, but the statute still must be interpreted using the usual rules of statutory construction. The statute must be read as a whole; individual words and phrases must be construed in

U.S. Bankruptcy Court - Hawaii   #06-90076    Dkt # 58    Filed  04/02/07    Page 6 of 13

context; and a literal interpretation that leads to absurd results must be rejected. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1168-69 (9th Cir. 2006).

It is true that the automatic stay generally prohibits creditors from making formal or informal demands for payment. For example, a creditor violates the automatic stay by sending dunning letters and making collection calls after the debtor files the bankruptcy petition. In re Henry, 266 B.R. 457, 470 (Bankr. C.D. Cal. 2001).

Taking the allegations of the complaint as true, the letter of December 5, 2006, falls within this category. It is a garden variety demand letter. The complaint sufficiently alleges a claim for violation of the automatic stay based upon that letter.

It is equally true, however, that the automatic stay does not preclude all communication between debtors and creditors. For example, the Bankruptcy Code permits creditors and debtors to enter into reaffirmation agreements. 11 U.S.C. § 524(c). Because an agreement is inherently a bilateral arrangement, the debtor and the creditor must communicate in order to make a reaffirmation agreement. It would be absurd to interpret the automatic stay to prohibit creditors and debtors from speaking about an agreement which another provision of the Code expressly permits. In re Duke, 79 F.3d 43, 46 (7th Cir. 1996); In re Bassett, 255 B. R. 747,

7

758 (B.A.P. 9th Cir. 2000), aff'd in part and rev'd in part on other grounds, 285 F.3d 882 (9th Cir. 2002); In re Epperson, 189 B.R. 195, 198-99 (E.D. Mo. 1995).

The question becomes whether the monthly statements which Countrywide mailed to Mr. Connor fall in the category of prohibited demands or permitted communications. The answer depends on whether the debtor needed the information contained in the statements when the statements were sent.

For example, in In re Draper, 237 B.R. 502 (Bankr. M.D. Fla. 1999), the debtor filed a chapter 13 case without an attorney and obtained confirmation of a plan which provided for the cure of defaults under his mortgage debt. The debtor made all the payments which his plan required. Both before and after confirmation, the mortgagee sent him monthly statements stating the purported arrearage. Each of the statements included a payment coupon, a return envelope, and language about bankruptcy similar to (but less detailed) than the language in Countrywide's statements to Mr. Connor. The debtor repeatedly asked the mortgagee to stop sending the statements (as the statements said he could do), but the mortgagee continued to mail the statements. Eventually, the debtor hired an attorney to seek a remedy against the mortgagee for violating the stay. The bankruptcy court held that the mortgagee had violated the stay by sending the monthly statements, because "[t] only credible reason to send such invoices on a

8

monthly basis is to try to collect payments from debtors protected by the automatic stay." Id. at 506. The court said that secured creditors can provide information to debtors during the bankruptcy case but "the statements should not request payment or enclose a payment coupon or a return envelope. The statement can do nothing more than provide necessary information." Id.

In Draper, the debtor did not need the information contained in the monthly statements for any purpose in the bankruptcy case. The court had already confirmed a plan which set out a new schedule for payments on the secured debt. The debtor had no reason to be concerned about the status of his payments under the old payment schedule. The only purpose for the statements was to induce the debtor to pay more than the confirmed plan required.

In In re Joens, 2003 WL 22839822, at *2 (Bankr. N.D. Iowa 2003), the debtors filed a chapter 7 petition and indicated in their statement of intentions that they would surrender their homestead. The mortgagee sent both monthly statements and collection letters to the debtors after the bankruptcy was filed. The monthly statements had bankruptcy disclaimer language similar to that which Countrywide used. The debtors' attorney attempted without success to stop the notices. The court held that the mortgagee violated the automatic stay, and that the bankruptcy disclaimer was ineffective. The court went on to observe, however,

9

that monthly statements sent to a chapter 7 debtor would not violate the stay in another context. "Only if a Chapter 7 debtor's statement of intention indicates the intent to continue to make payments and retain property may a creditor continue to send monthly statements postpetition." Id.

Joens stands for the proposition that a creditor cannot send monthly statements to a debtor who has stated the intention of surrendering the collateral, but the creditor can send statements to a debtor who intends to retain the property and pay the secured debt. The debtor in the former case has no need for the information contained in the statements; that debtor wants to give up the collateral and obtain a discharge of the debt. In the latter case, however, the debtor intends to pay the secured debt and needs the statements to ascertain how much is due.[2]

Another example is Chase Manhattan Mortgage Corp. v. Padgett, 268 B.R. 309 (S.D. Fla. 2001). After the debtors' chapter 13 plan was confirmed, the contractual mortgage payments increased because the property taxes and insurance premiums (which the debtors were required to pay through an escrow account)

---

[2]"A secured creditor should be encouraged to send out payment coupons, envelopes and periodic statements if a debtor has filed a statement that the debtor plans to keep property subject to secured debt and to make payments. Debtors frequently complain to the court that they want to make their payments, but their creditors do not cooperate by providing payment coupons. Secured creditors hesitate to provide such cooperation for fear of violating the automatic stay or the discharge injunction." In re Henry, 266 B.R. at 471. See also In re Ramirez, 280 B.R. 252 (C.D. Cal. 2002) (auto lender did not violate discharge injunction by sending monthly statements postdischarge to a debtor who chose to retain and make payments on the secured auto).

U.S. Bankruptcy Court - Hawaii   #06-90076   Dkt # 58   Filed  04/02/07   Page 10 of 13

rose.  Contrary to federal and state law, the mortgagee did not notify the debtors of this fact in a timely manner; instead, the mortgagee advanced the funds needed to pay the higher taxes and premiums and did not tell the debtors about the increased arrearage for almost two years.  The debtors argued that the mortgagee waived its right to recover the increased amounts when it failed to notify the debtors as the law required.  The mortgagee argued that section 362(a)(6) prohibited it from giving that notice.  The court held that "section 362(a) does not prohibit mere notice to a mortgagor in bankruptcy of an advance or escrow deficiency." Id. at 314-15.  Again, the automatic stay does not prohibit the secured lender from giving information to the debtor that the debtor wants and needs.

Timing may not be conclusive, however.  A creditor may not "provide information" in a manner which is threatening, harassing, or coercive.  In re Epperson, 189 B.R. at 198-99.

Applying this principle to the facts of this case, it appears that the complaint states a claim as to some of the monthly statements but not others.

While Mr. Connor was in chapter 13, he had an interest in receiving current information about the status of his mortgage.  In order to formulate a confirmable chapter 13 plan, Mr. Connor needed to know the amount of his mortgage arrears and current payments.  The complaint does not allege that the monthly statements

11

U.S. Bankruptcy Court - Hawaii   #06-90076   Dkt # 58   Filed  04/02/07   Page 11 of 13

were threatening or coercive. Therefore, the complaint does not state a claim insofar as those statements are concerned.

After Mr. Connor converted his case to chapter 7 and stated his intention to surrender the mortgaged property,[3] however, the situation changed. Mr. Connor no longer needed to know the status of the mortgage payments. The only purpose for sending the monthly statements after that point was to induce Mr. Connor to make payments on a prepetition debt which was dischargeable and has now been discharged. Making a request for payment in that circumstance could be a violation of the automatic stay.

## *CONCLUSION*

Mr. Connor's motion for reconsideration should be granted. The complaint should be dismissed only as to any claims arising out of the monthly statements sent by Countrywide while Mr. Connor was in chapter 13. An appropriate separate

---

[3]In other papers filed in the case, Mr. Connor claims that he intended to surrender the home to the trustee, not to Countrywide. As a non-lawyer, Mr. Connor may have misunderstood the statement of intentions form. When a debtor files a bankruptcy petition, all of the debtor's property automatically becomes property of the estate, 11 U.S.C. § 541, which is under the trustee's exclusive control, id. § 323(a). The debtor need not state an intention to surrender property to the trustee, because that happens when the debtor files the bankruptcy petition automatically as a matter of law. The "surrender" to which the statement of intentions refers is a surrender to the secured creditor.

If Mr. Connor did not in fact intend to surrender the collateral, but rather intended to retain it, the outcome in this adversary might be different. In this order, I conclude only that the allegations of the complaint are sufficient to survive a motion to dismiss.

U.S. Bankruptcy Court - Hawaii   #06-90076   Dkt # 58   Filed  04/02/07   Page 12 of 13

order will be entered.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 04/02/2007